Filed 1/16/14  P. v. Nunez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>MIKE CARRILLO NUNEZ,<br><br>    Defendant and Appellant. | G047779<br><br>(Super. Ct. No. 11CF3422)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Dan McNerney, Judge.  Affirmed.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Defendant Mike Carillo Nunez appeals his conviction for aggravated assault and a related enhancement. He argues the trial court abused its discretion by allowing the prosecution to question him about the circumstances of a plea bargain leading to his prior conviction. He also contends his defense counsel's conduct constituted ineffective assistance of counsel by "opening the door" to such questions. We conclude the trial court acted within its discretion by permitting the testimony and that defense counsel was not deficient for raising the point on direct examination.

I

FACTS

Given the limited issues on appeal, it is not necessary to recount the facts of this case in detail. Suffice to say that defendant met Jesus Caballero late one night in December 2011 when defendant, who was standing on a street corner, waved to Caballero, who was driving past. Defendant told Caballero he was a prostitute and offered sex for money, and the two engaged in some sexual behavior later that night. A few days later, Caballero called defendant and invited him to a party. At the party, defendant became "very intoxicated." They left that party at a security guard's request, and went to another.

They eventually left that party and went to Cabellero's house, where he lived in a converted garage. Defendant went into the bathroom, which had a second door that led to the main part of the house. A few minutes later, defendant returned with a kitchen knife and stabbed Caballero in the stomach. When Caballero asked why defendant had stabbed him, defendant said because Caballero wanted to rob him. Defendant left the garage, and police were eventually called and responded. They found defendant being detained by one of Caballero's family members. They also found a knife with dried blood on it that could have come from the kitchen. Caballero had two separate stab wounds, which would have been fatal if left untreated. He underwent two surgeries to repair the injuries. Caballero testified that he was in the country illegally, and after the

2

incident with defendant, he learned that a "U visa" would allow him to stay in the country if he cooperated with law enforcement and prosecutors.

At trial, defendant testified that after he met Caballero, he continually told him that he was only interested in women. With regard to the night of the stabbing, defendant testified that he wanted to go back to his hotel that night but Caballero refused to take him, and that Caballero made sexual advances toward him. Fearing that Caballero would rape him, he brought the knife back into the room from the kitchen. When he returned, Caballero again began making advances toward him, and he stepped back and took the knife from his shoe. He hoped to scare Caballero, but Caballero jumped on him, resulting in Caballero's injuries. He left because he was on probation and afraid of trouble with the police.

Defendant was charged with aggravated assault (Pen. Code, § 245, subd. (a)(1)),[1] with an allegation that he personally inflicted great bodily injury. It was further alleged that he had two prior serious felony convictions within the meaning of the "Three Strikes" law (§ 667, subds. (d), (e)(2)(A), § 1170.12, subds. (b), (c)(2)(A) and the five-year enhancement provision of section 667, subdivision (a)(1).)

At the conclusion of trial, the jury found defendant guilty of the assault charge and concluded the great bodily injury allegation was true. The court found the prior conviction allegations true.

During sentencing, the court vacated the true finding on one of the strike prior allegations. The court imposed the upper term of four years for the assault charge, doubled under the provisions of the Three Strikes law. The court also imposed consecutive terms of three years for the enhancement and five years for the serious felony enhancement, for a total term of 16 years.

---

[1] Subsequent statutory references are to the Penal Code.

## II

## DISCUSSION

During pretrial proceedings, the court ruled that if defendant chose to testify, the prosecution could use his two prior felony convictions, both for residential burglary, to impeach him. The court imposed restrictions on how the priors could be introduced, specifically, that the jury would only learn that they were crimes involving dishonest conduct. Both convictions were from 2011 and were the result of a plea bargain, which dismissed four other burglary charges pursuant to a waiver under *People v. Harvey* (1975) 25 Cal.3d 754, 758.

Defendant did choose to testify. At the beginning of his testimony, his attorney asked him if he had been convicted of two prior crimes of dishonesty, and defendant answered yes. He was asked if the convictions were the result of a guilty plea or conviction after a trial, and defendant responded they were the result of a guilty plea. Counsel then asked if he plead guilty because he was guilty, and defendant said yes. Later, outside the presence of the jury, the prosecutor asked to be permitted to establish on cross-examination that the guilty pleas were the result of a negotiated plea bargain. The prosecutor believed, based on defense counsel's second and third questions, that defendant had insinuated that he was a person who took responsibility for his acts, and because he did not plead guilty in this case, he must not be guilty. The prosecutor wanted the jury to be aware that it was a negotiated bargain in exchange for the dismissal of other counts.

Defense counsel argued the prejudice would outweigh any probative value, but the court agreed with the prosecutor that defendant had created the impression that defendant had simply pled guilty. The questions counsel had asked had thereby "opened this door." The court explained: "I agree that the People should be given an opportunity to in some way clarify what may have been the defendant's motives for entering the plea to these two felonies from 2011. I have some trepidation that a broad discussion

4

regarding the defendant's other counts that were dismissed, even though he accepted financial responsibility for them, although I find it to be probative, I find that the jury hearing about five or six other felonies that the defendant was charged with has the potential for being substantially more prejudicial than probative. However, as it relates to that prior case, I will allow you to ask the defendant initially did you enter a not guilty plea and did you then later change your plea to guilty as a result of a plea bargain arrangement as to these two felony charges."

During cross-examination, the prosecutor questioned the defendant as follows:

"Q. Okay. Sir, you — you were charged with crimes — felony crimes involving conduct of dishonesty; correct, last year?

"A. Yes.

"Q. And when you were first brought in on those charges, you entered a plea of not guilty; correct?

"A. I don't remember. I just remember I went to court about two times, but my attorney didn't show up.

"Q. At some point, though, you entered a plea of not guilty to those crimes; correct?

"A. I don't remember.

"Q. Ultimately you decided to change your plea and you decided to change your plea as a result of a plea bargain between yourself and the prosecution; correct?

"A. I just simply said what I had done and my attorney didn't show up that day. It was another person who showed up [in his place] and he told me that if I signed an offer from the district attorney that I would just get four months.

"Q. So basically you were told that you would get a deal if you pled guilty; correct?

"A. Yes

5

"Q. So you decided to take that deal; correct?

"A. Yes, I was told that with that, everything would be paid.

"Q. Okay. And that's why you pled guilty to two prior felonies involving crimes with dishonest conduct; correct?

"A. Yes."

During closing argument, the prosecutor addressed defendant's prior convictions only briefly, by informing the jury that they could use them to assess his credibility.

A trial court's ruling on the admissibility of evidence is generally reviewed for abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 196-197 ["[i]n determining the admissibility of evidence, the trial court has broad discretion. . . . On appeal, a trial court's decision to admit or not admit evidence, whether made *in limine* or following a hearing pursuant to Evidence Code section 402, is reviewed only for abuse of discretion."].) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.) Further, even where evidence has been erroneously excluded or admitted, the judgment or decision shall not be reversed unless the reviewing court believes the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; Evid. Code, §§ 353, 354.)

The court did not abuse its discretion in permitting the prosecutor to briefly explore this issue and correct any inaccurate impression the jury may have formed. Defendant argues the court's decision allowed the prosecution to highlight that defendant received a plea deal, which resulted in the impression that defendant was someone who did not accept responsibility but sought to gain any advantage. Because credibility was a key issue, he argues this was unfairly prejudicial. But he offers no argument as to why this additional information was *more* prejudicial than the existence of the priors involving dishonesty in the first place, which would of course call defendant's credibility and honesty into question. There was also other testimony that impeached defendant's

6

honesty, specifically, the fact that he initially told the police an entirely different story about what had happened that night.

Further, defendant simply makes too much of this issue — according to the trial transcript, the jury heard several hundred pages of testimony in this case, and the time spent addressing defendant's priors constituted less than a page and a half. The jury learned from this testimony that defendant served only four months in custody, which would hardly lead to an inference that defendant had committed a particularly serious crime. They also did not learn how many other charges were dismissed subject to the plea agreement. Defendant's argument that this information would cause the jury to reach highly prejudicial conclusions about defendant's character is nothing more than speculation. Accordingly, defendant has not met his burden to show that the court's decision to allow brief questioning about defendant's priors was an abuse of discretion.

Defendant also argues that defense counsel's initial questions that "opened the door" for the prosecutor's questions constituted ineffective assistance of counsel. "The standards for ineffective assistance of counsel claims are well established. 'We presume that counsel rendered adequate assistance and exercised reasonable professional judgment in making significant trial decisions.' [Citation.] To establish a meritorious claim of ineffective assistance, defendant 'must establish either: (1) As a result of counsel's performance, the prosecution's case was not subjected to meaningful adversarial testing, in which case there is a presumption that the result is unreliable and prejudice need not be affirmatively shown [citations] or (2) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and there is a reasonable probability that, but for counsel's unprofessional errors and/or omissions, the trial would have resulted in a more favorable outcome. [Citations].' [Citation.]" (*People v. Prieto* (2003) 30 Cal.4th 226, 261.)

Defendant does not meet the high bar necessary to establish ineffective assistance of counsel. At worst, defense counsel committed a tactical error, which is

generally not deemed reversible.  (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)  Even if he could persuade us that counsel's performance fell below an objective standard of reasonableness, he comes nowhere close to establishing that but for the error, there was a reasonable probability of a different verdict.  As we discussed above, the testimony about defendant's priors was brief.  His assertion that the evidence was "highly prejudicial" is conclusory.  Further, the evidence against him was overwhelming, and even without any discussion of his prior convictions, it is likely that he would have been convicted here.  We find no error.

## III

## DISPOSITION

The judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.